TRINA A. HIGGINS, United States Attorney (UT #07349)
RICHARD M. ROLWING, Special Assistant United States Attorney (OH #0062368)
JOHN E. SULLIVAN, Senior Litigation Counsel, Tax Division (WI #1018849)
ERIKA V. SUHR, Trial Attorney, Tax Division (FL #1020532)
Attorneys for the United States of America
111 South Main Street, #1800
Salt Lake City, Utah 84111
Telephone: (801) 524-5682
Email: richard.m.rolwing@usdoj.gov
        john.e.sullivan@usdoj.gov
        erika.v.suhr@usdoj.gov

# SEALED

## IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF UTAH

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. |
| Plaintiff, | : | **INDICTMENT** |
| v. | : | Viols. |
| GRIGOR TERMENDJIAN, | : | **Count 1** – 18 U.S.C. § 371 (Conspiracy to Defraud the United States) |
| Defendant. | : | |
| | : | **Count 2** – 18 U.S.C. § 1956(h) (Conspiracy to Commit Money Laundering Offenses) |
| Case: 2:23–cr–00119<br>Assigned To : Kimball, Dale A.<br>Assign. Date : 3/28/2023 | : | **Counts 3 thru 6** – 18 U.S.C. § 1957 (Money Laundering) |
| | : | |
| | | Forfeiture |

The Grand Jury charges:

**Count 1**
**18 U.S.C. § 371**
**(Conspiracy to Defraud the United States)**

**<u>The Defendant and His Entities</u>**

1.     At all times relevant to this indictment, Defendant GRIGOR TERMENDJIAN was a resident of California who owned and controlled numerous businesses in the Los Angeles area.

2.     Defendant TERMENDJIAN controlled numerous bank accounts including these maintained in the following names:

> Speedy Fuel, Inc.;
>
> Speedy Fuel Distribution, Inc.;
>
> Speedy Lion Renewable Fuel Investments, LLC ("Speedy Lion Investments");
>
> Century Energy, Inc.;
>
> Vernon Truck Wash, Inc.;
>
> Petrolion, Inc.; and
>
> International Pita Bread, Inc.

### Other Persons and Entities

3.     Jacob Kingston was a resident of Utah and owned 50% of Washakie Renewable Energy, LLC ("Washakie"), a biodiesel company, and United Fuel Supply, ("UFS"), a fuel company, both with corporate offices in Salt Lake City, Utah.  Jacob Kingston was Washakie's chief executive officer, and also controlled UFS.

4.     Levon Termendzhyan, also known as Lev Aslan Dermen, was a resident of Los Angeles, California, and was the brother of Defendant TERMENDJIAN.  Levon Termendzhyan had an interest in or controlled several companies in the Los Angeles area, including:

> Noil Energy Group, Inc. ("Noil" is "Lion" spelled backwards);
>
> Speedy Lion Renewable Fuel Investments, LLC ("Speedy Lion Investments");
>
> G.T. Energy LLC ("G.T. Energy"); and

SBK Holdings USA, Inc.

5.      SBK Holdings USA, Inc. (formerly SBK Holdings, Inc.) was a corporation formed in California in December 2013 by Levon Termendzhyan.  While it was initially purportedly owned by both Levon Termendzhyan and Jacob Kingston, Levon Termendzhyan always controlled SBK Holdings USA's bank accounts, and he became the sole owner of the entity in or about September 2014.

6.      Defendant TERMENDJIAN's moniker was "Speedy."  Levon Termendzhyan's moniker was "Lion."  In September 2013, they formed Speedy Lion Investments, a company owned 50% each by Defendant TERMENDJIAN and Levon Termendzhyan.

7.      In 2016, Defendant TERMENDJIAN formed Century Energy, Inc.  Defendant TERMENDJIAN controlled Century Energy and had sole signature authority over its bank accounts.

8.      Sezgin Baran Korkmaz was a resident of Turkey who controlled, either directly or through associates, bank accounts in Turkey and Luxembourg maintained in the following names:

| Name | Country |
| --- | --- |
| SBK Holding A.S. | Turkey |
| Komak Isi Yalitim Sistemleri Sanayi ve Tic. L.S. ("Komak") | Turkey |
| Biofarma Ilac San. ve Tic. A.S. ("Biofarma") | Turkey |
| Account YY (an account in the name of an associate of Korkmaz) | Turkey |
| Isanne S.à.r.l. ("Isanne") | Luxembourg |

9.      At all times relevant to this Indictment, the Internal Revenue Service ("IRS") was

a constituent agency of the United States Department of Treasury responsible for administering and enforcing the tax laws of the United States and collecting the taxes owed to the Treasury of the United States by taxpayers.

### Washakie Fraud Scheme

10.     Beginning in or about the Spring of 2012 and continuing up to at least 2018, Jacob Kingston and Levon Termendzhyan conspired with each other and others to commit mail and wire fraud by scheming to fraudulently obtain U.S. Treasury checks from the IRS by filing false claims for refundable renewable fuel credits. Pursuant to the scheme, Jacob Kingston and Levon Termendzhyan caused Washakie Renewable Energy and UFS to file over $1 billion of false claims with the IRS. As a result of these false claims, the IRS issued and mailed U.S. Treasury checks to Washakie totaling approximately $470 million that Washakie and UFS were not entitled to receive. This scheme is hereinafter referred to as the "Washakie Fraud Scheme."

11.     As part of the Washakie Fraud Scheme, Levon Termendzhyan falsely promised Jacob Kingston protection from investigation and prosecution for the mail and wire fraud crimes they agreed to commit. The protection was purportedly to come from Levon Termendzhyan's umbrella of corrupt law enforcement in exchange for a share of the Washakie Fraud Scheme proceeds. Levon Termendzhyan directed Jacob Kingston to send Levon Termendzhyan's share of the proceeds to foreign bank accounts in Turkey and Luxembourg controlled by Sezgin Baran Korkmaz. These fraud proceeds represented taxable income to Levon Termendzhyan.

12.     In total, as part of the Washakie Fraud Scheme, Jacob Kingston, at the direction of Levon Termendzhyan and Sezgin Baran Korkmaz, caused Washakie to wire transfer approximately $133 million of the Washakie Fraud Scheme proceeds to bank accounts in Turkey and Luxembourg that were controlled by Korkmaz.

13.     As part of the Washakie Fraud Scheme, Levon Termendzhyan also directed Sezgin Baran Korkmaz to falsely represent to Jacob Kingston that fraud proceeds belonging to both Jacob Kingston and Levon Termendzhyan were being invested in Turkish companies controlled by Korkmaz.  Instead, without telling Jacob Kingston, Levon Termendzhyan and Sezgin Baran Korkmaz returned over $63 million of the funds sent from Washakie to Turkey and Luxembourg back to numerous entities controlled by Levon Termendzhyan and his brother, Defendant TERMENDJIAN, in the United States.

14.     Beginning in or about the fall of 2013, and continuing through 2015, Levon Termendzhyan and Sezgin Baran Korkmaz directed and caused the transfer of $38 million of fraud proceeds from Turkish accounts controlled by Sezgin Korkmaz to a Speedy Lion Investments bank account belonging to Defendant TERMENDJIAN in Los Angeles, California.

15.     In or about 2015, Levon Termendzhyan and Sezgin Baran Korkmaz directed and caused the transfer of $25 million in fraud proceeds from accounts in Luxembourg and Turkey to bank accounts in the United States controlled by Levon Termendzhyan, including a bank account in the name of SBK Holdings USA, Inc.

16.     In or about March 2015, Levon Termendzhyan caused Jacob Kingston to have Washakie wire transfer $8.55 million in fraud proceeds to SBK Holdings USA, Inc.'s bank account.

### Statutory Allegations

17.     From in or about September 2013, and continuing at least through in or about March 2020, in the District of Utah and elsewhere, the defendant,

**GRIGOR TERMENDJIAN,**

and other persons both known and unknown to the Grand Jury unlawfully, willfully and

knowingly did combine, conspire, confederate and agree to defraud the United States and an

agency thereof, to wit, the Internal Revenue Service ("IRS") of the United States Department of

Treasury.

18.     It was part of and an object of the conspiracy that Defendant TERMENDJIAN

and others known and unknown to the Grand Jury unlawfully, willfully and knowingly would

and did defraud the United States and the IRS by deceitful and dishonest means for the purpose

of impeding, impairing, defeating and obstructing the lawful governmental functions of the IRS

in the ascertainment, evaluation, assessment, and collection of income taxes.

**Manner and Means**

19.     The manner and means by which Defendant TERMENDJIAN and his co-

conspirators would and did carry out the objectives of the conspiracy included the following:

a)      They transferred, and caused to be transferred, millions of dollars in

taxable proceeds from the Washakie Fraud Scheme through numerous entities in Turkey and

Luxembourg to conceal the nature, source, and ownership of the funds and to conceal the

payment and receipt of the taxable fraud proceeds from the IRS.

b)      They created and signed, and caused to be created and signed, documents

that falsely characterized the transfers of fraud proceeds from the United States to Turkey and

Luxembourg, and from Turkey and Luxembourg to the United States, as investments or loans to

disguise the true nature of the transactions and conceal the payment and receipt of proceeds from

the IRS.

c)      They commingled funds from other sources with the Washakie Fraud

Scheme proceeds ("hereinafter commingled fraud proceeds") for the purposes of disguising and

concealing those proceeds.

d) They would and did mischaracterize the transactions involving commingled fraud proceeds as partnership investments, loans, share purchases, the repayment of a loan, and the payment of interest on a loan.

e) They would and did transfer commingled fraud proceeds through numerous entities in the United States before sending commingled fraud proceeds back to Turkey for the purpose of further disguising and concealing them from the IRS.

f) They withdrew, and caused to be withdrawn, millions of dollars of commingled fraud proceeds in the form of cashier's checks.

g) They held millions of dollars of commingled fraud proceeds in the form of cashier's checks outside of the U.S. banking system for extensive time periods for the purposes of concealing the proceeds from the IRS.

h) They opened new business bank accounts at different banks for the purposes of further concealing commingled fraud proceeds.

i) They transferred, and caused to be transferred, the proceeds from the Washakie Fraud Scheme for the purpose of purchasing a luxury seaside house in the United States and created and caused to be created, false loan documents relating to this purchase.

j) They filed, and caused to be filed, both business and personal income tax returns with the IRS that failed to report any of the taxable fraud proceeds as income.

k) They used proceeds from the Washakie Fraud Scheme to purchase industrial machinery, an apartment building, and other buildings in the names of nominee entities to conceal the nature, source, and ownership of the fraud proceeds.

l)  They transferred and caused to be transferred some of the commingled fraud proceeds, mischaracterized as the repayment of loans, to other business bank accounts for the purpose of concealing the nature, source, and ownership of the fraud proceeds.

m)  They made false statements to federal law enforcement authorities investigating the Washakie Fraud Scheme.

n)  They provided copies of a false loan document to federal law enforcement authorities investigating the Washakie Fraud Scheme in the District of Utah.

o)  They transferred by wire, and caused to be transferred by wire, millions of dollars of taxable proceeds from the Washakie Fraud Scheme between bank accounts in the United States and bank accounts in Turkey and Luxembourg, including the following 20 wire transfers totaling approximately $238,564,692 on or about the dates and in the approximate amounts set forth in Table A below:

| Table A | | | | | |
|---------|---|---|---|---|---|
| Para. Num. | Date | Sender (Country) | Recipient (Country) | Amount Sent Out of USA | Amount Sent Back to USA |
| A. | 09/09/13 | Washakie (USA) | Komak (Turkey) | $4,000,000 | |
| B. | 09/09/13 | Washakie (USA) | Komak (Turkey) | $5,000,000 | |
| C. | 09/12/13 | Komak (Turkey) | Speedy Lion Investments (USA) | | $4,999,964 |
| D. | 09/17/13 | Komak (Turkey) | Speedy Lion Investments (USA) | | $1,999,964 |

| Table A | | | | | |
|---|---|---|---|---|---|
| **Para. Num.** | **Date** | **Sender (Country)** | **Recipient (Country)** | **Amount Sent Out of USA** | **Amount Sent Back to USA** |
| E. | 09/19/13 | Komak (Turkey) | Speedy Lion Investments (USA) | | $1,999,964 |
| F. | 12/31/13 | Washakie (USA) | Komak  (Turkey) | $13,000,000 | |
| G. | 01/21/14 | Komak (Turkey) | Speedy Lion Investments (USA) | | $9,000,000 |
| H. | 05/19/15 | Washakie (USA) | Isanne SARL (Luxembourg) | $35,000,000 | |
| I. | 05/27/15 | Washakie (USA) | Isanne SARL (Luxembourg) | $21,300,000 | |
| J. | 06/22/15 | Account YY (Turkey) | Speedy Lion Investments (USA) | | $6,999,950 |
| K. | 06/23/15 | Account YY (Turkey) | Speedy Lion Investments (USA) | | $12,999,950 |
| L. | 07/03/15 | Isanne SARL (Luxembourg) | SBK Holdings USA, Inc. (USA) | | $15,000,000 |
| M. | 10/27/15 | Speedy Lion Investments (USA) | Account YY (Turkey) | $6,999,950 | |
| N. | 10/28/15 | Speedy Lion Investments (USA) | Account YY (Turkey) | $12,999,950 | |
| O. | 11/03/15 | Account YY (Turkey) | G.T. Energy (USA) | | $20,000,000 |
| P. | 06/09/16 | G.T. Energy (USA) | SBK Holding AS (Turkey) | $23,000,000 | |

| Table A | | | | | |
|---|---|---|---|---|---|
| Para. Num. | Date | Sender (Country) | Recipient (Country) | Amount Sent Out of USA | Amount Sent Back to USA |
| Q. | 06/13/16 | SBK Holding AS (Turkey) | G.T. Energy (USA) | | $23,000,000 |
| R. | 10/21/16 | SBK Holdings USA, Inc. (USA) | SBK Holding AS (Turkey) | $6,000,000 | |
| S. | 11/08/16 | SBK Holdings USA, Inc. (USA) | SBK Holding AS (Turkey) | $15,000,000 | |
| T. | 11/08/16 | SBK Holdings USA, Inc. (USA) | SBK Holding AS (Turkey) | $265,000 | |
| | | | **Totals** | $142,564,900 | $95,999,792 |

p)  They conducted, and caused to be conducted, millions of dollars of financial transactions involving taxable proceeds from the Washakie Fraud Scheme within the United States, including the following 16 financial transactions totaling approximately $126,580,038 on or about the dates and in the approximate amounts set forth in Table B below:

| Table B | | | | | |
|---|---|---|---|---|---|
| Para. Num. | Date | Sender/ Entity/ Person | Recipient/ Entity/ Person | Financial Transaction | Amount |
| A. | 03/20/15 | Washakie | SBK Holdings USA, Inc. | Wire transfer | $8,550,000 |
| B. | 03/26/15 | SBK Holdings, USA, Inc. | Title 365 Company | Wire transfer | $3,520,085 |

| Table B | | | | | |
|---|---|---|---|---|---|
| Para. Num. | Date | Sender/ Entity/ Person | Recipient/ Entity/ Person | Financial Transaction | Amount |
| C. | 09/29/15 | Speedy Lion Investments | Grigor Termendjian | Withdrawal to purchase two cashier's checks | $41,367,000 |
| D. | 10/22/15 | Grigor Termendjian | Speedy Lion Investments | Deposit of cashier's check | $21,367,000 |
| E. | 04/21/16 | Grigor Termendjian | Speedy Lion Investments | Deposit of cashier's check | $20,000,000 |
| F. | 05/02/16 | Speedy Lion Investments | G.T. Energy | Wire transfer | $9,000,000 |
| G. | 12/29/16 | Speedy Lion Investments | Century Energy | Wire transfer | $11,000,000 |
| H. | 10/01/19 | Century Energy | Hendrix Henergy Global | Wire transfer | $3,900,000 |
| I. | 10/04/19 | Century Energy | Industrial Energy Solutions, Inc. | Withdrawal to purchase bank check | $200,000 |
| J. | 10/28/19 | Century Energy | Zhangjiagang Furuicit Co. | Wire transfer | $216,000 |
| K. | 10/30/19 | Century Energy | Mariner's Escrow | Wire transfer | $2,000,000 |
| L. | 12/24/19 | Century Energy | Mojave Pipeline Operating Co. | Wire transfer | $459,953 |
| M. | 03/23/20 | Century Energy | Vernon Truck Wash, LLC | Withdrawal to purchase bank check | $2,000,000 |
| N. | 03/23/20 | Century Energy | Petrolion Inc. | Withdrawal to purchase bank check | $500,000 |

| Table B | | | | | |
|---|---|---|---|---|---|
| Para. Num. | Date | Sender/ Entity/ Person | Recipient/ Entity/ Person | Financial Transaction | Amount |
| O. | 03/23/20 | Century Energy | Speedy Fuel Distribution, Inc. | Withdrawal to purchase bank check | $2,000,000 |
| P. | 03/23/20 | Century Energy | International Pita Bread, Inc. | Withdrawal to purchase bank check | $500,000 |
| | | | | Total | $126,580,038 |

### Overt Acts

20.     In furtherance of the conspiracy and to effect the illegal objects thereof, Defendant TERMENDJIAN and his co-conspirators committed the following overt acts, among others, in the District of Utah and elsewhere:

a)     On or about the dates and in the approximate amounts set forth in Table A, which is incorporated by reference as if fully set forth herein, Defendant TERMENDJIAN and his co-conspirators conducted, and caused to be conducted, wire transfer transactions with proceeds from the Washakie Fraud Scheme, with each act set forth in Table A constituting a separate overt act.

b)     On or about the dates and in the approximate amounts set forth in Table B, which is incorporated by reference as if fully set forth herein, Defendant TERMENDJIAN and his co-conspirators conducted, and caused to be conducted, financial transactions with proceeds from the Washakie Fraud Scheme, with each act set forth in Table B constituting a separate overt act.

      c)     In or about September 9, 2013, Defendant TERMENDJIAN formed, and caused to be formed, Speedy Lion Investments.

      d)     In or about September 10, 2013, Defendant TERMENDJIAN opened, and caused to be opened, a business bank account in the name of Speedy Lion Investments at Bank of America.

      e)     In or about September 2013, Defendant TERMENDJIAN requested that approximately $9,000,000 in proceeds from the Washakie Fraud Scheme be transferred through multiple Turkish company accounts before being sent to a Speedy Lion Investments account in the United States.

      f)     On or about September 23, 2013, Defendant TERMENDJIAN's co-conspirators caused a document to be created and signed that falsely characterized the transfers of $18 million of taxable funds from Washakie to Komak as an investment made by Washakie in Komak.

      g)     On or about January 13, 2014, Defendant TERMENDJIAN commingled $5,611,126 from an account in the name of Speedy Lion Renewable Fuel Investments, Inc., with funds in a Speedy Lion Investments account that contained Washakie Fraud Scheme proceeds that had been transferred from Turkey.

      h)     On or about October 5, 2014, Levon Termendzhyan caused a Form 1040, U.S. Individual Income Tax Return, to be filed with the IRS for tax year 2013 that did not report any of the Washakie Fraud Scheme proceeds as personal income.

      i)     On or about October 9, 2014, Defendant TERMENDJIAN caused a Form 1040, U.S. Individual Income Tax Return, to be filed with the IRS for tax year 2013 that did not report any of the Washakie Fraud Scheme proceeds as personal income.

j)      On or about November 17, 2014, Defendant TERMENDJIAN caused a Form 1065, U.S. Return of Partnership Income, to be filed with the IRS on behalf of Speedy Lion Investments for tax year 2013 that reported the receipt of fraud proceeds as "capital contributions" made by Defendant TERMENDJIAN and Levon Termendzhyan.

k)      On or about March 27, 2015, Defendant TERMENDJIAN signed a deed of trust in connection with the purchase of a luxury seaside house in the name of Gilbert Island Property, LLC.

l)      On or about April 10, 2015, Levon Termendzhyan caused a Form 1040, U.S. Individual Income Tax Return, to be filed with the IRS for tax year 2014 that did not report any of the Washakie Fraud Scheme proceeds as personal income.

m)      On or about September 29, 2015, Defendant TERMENDJIAN withdrew $41,367,000 of commingled fraud proceeds from a Speedy Lion Investments account to purchase two cashier's checks in the amounts of $21,367,000 and $20,000,000, both made payable to "GRIGOR TERMENDJIAN."

n)      From on or about September 29, 2015 to October 22, 2015, Defendant TERMENDJIAN concealed $21,367,000 of commingled fraud proceeds by keeping possession of a cashier's check rather than negotiating it and placing the funds back into the U.S. banking system.

o)      From on or about September 29, 2015 to April 21, 2016, Defendant TERMENDJIAN concealed $20,000,000 of commingled fraud proceeds by keeping possession of a cashier's check rather than negotiating it and placing the funds back into the U.S. banking system.

p)      On or about October 5, 2015, Defendant TERMENDJIAN caused a Form 1065, U.S. Return of Partnership Income, to be filed with the IRS on behalf of Speedy Lion Investments for tax year 2014 that mischaracterized the receipt of fraud proceeds as "Mortgages, notes, bonds payable in less than 1 year."

q)      On or about October 15, 2015, Defendant TERMENDJIAN caused a Form 1040, U.S. Individual Income Tax Return, to be filed with the IRS for tax year 2014 that did not report any of the Washakie Fraud Scheme proceeds as personal income.

r)      In or about late October and early November 2015, Defendant TERMENDJIAN and his co-conspirators caused $20,000,000 in commingled fraud proceeds to be transferred from Speedy Lion Investments back to Turkey with instructions to return the funds to the United States to a bank account in the name of G.T. Energy and to falsely characterize the transaction as a "share purchase."

s)      In or about January 2016, Jacob Kingston signed a false loan agreement called "the additional protocol to the partnership agreement" that mischaracterized the transfer of $18 million of fraud proceeds from Komak to a Speedy Lion Investments account as a loan for the purchase of machinery for Komak.

t)      On or about April 19, 2016, Defendant TERMENDJIAN caused a Form 1065, U.S. Return of Partnership Income, to be filed with the IRS on behalf of Speedy Lion Investments for tax year 2015 that falsely reported a $20,972,003 investment in a liquified natural gas power plant.

u)      On or about April 20, 2016, Defendant TERMENDJIAN caused Bank of America to reissue a $20,000,000 cashier's check originally made payable to "GRIGOR TERMENDJIAN" payable to Speedy Lion Investments.

v)      On or about April 21, 2016, Defendant TERMENDJIAN opened a new bank account at a different bank, Wells Fargo, in the name of Speedy Lion Investments, and deposited a $20,000,000 cashier's check.

w)      In or about August 2016, Sezgin Baran Korkmaz caused a false promissory note relating to the $56.3 million that Washakie had wire transferred in 2015 to Isanne in Luxembourg to be created and signed that mischaracterized the $56.3 million as a loan from Washakie to SBK Holding AS in Turkey.

x)      On or about September 14, 2016, Defendant TERMENDJIAN caused a Form 1040, U.S. Individual Income Tax Return, to be filed with the IRS for tax year 2015 that did not report any of the Washakie Fraud Scheme proceeds as personal income.

y)      On or about October 7, 2016, Defendant TERMENDJIAN withdrew $11,000,000 of commingled fraud proceeds from a Speedy Lion Investments account to purchase a cashier's check.

z)      Between on or about October 7, 2016 and December 21, 2016, Defendant TERMENDJIAN concealed $11,000,000 of commingled fraud proceeds by keeping possession of a cashier's check rather than negotiating it and placing the funds back into the U.S. banking system.

aa)      On or about October 14, 2016, Levon Termendzhyan caused a Form 1040, U.S. Individual Income Tax Return, to be filed with the IRS for tax year 2015 that did not report any of the Washakie Fraud Scheme proceeds as personal income.

bb)      On or about December 21, 2016, Defendant TERMENDJIAN deposited, and caused to be deposited, $11,000,000 of commingled fraud proceeds into a Speedy Lion Investments account.

cc)     On or about December 29, 2016, Defendant TERMENDJIAN caused $11,000,000 of commingled fraud proceeds to be wire transferred from a Speedy Lion Investments account to a Century Energy account.

dd)     On or about October 9, 2017, Defendant TERMENDJIAN caused a Form 1120S, U.S. Income Tax Return for an S Corporation, to be filed with the IRS on behalf of Century Energy for tax year 2016 that reported total assets of "0."

ee)     On or about October 8, 2018, Defendant TERMENDJIAN caused a Form 1120S, U.S. Income Tax Return for an S Corporation, to be filed with the IRS on behalf of Century Energy for tax year 2017 that reported total assets of "0."

ff)     On or about December 21, 2018, Defendant TERMENDJIAN used $15,000,000 of commingled fraud proceeds in a Century Energy account to purchase a certificate of deposit in the name of Century Energy.

gg)     In or about April 2019, Sezgin Baran Korkmaz caused a copy of a false loan agreement between Washakie and SBK Holding AS to be produced to federal agents in the District of Utah who were investigating the Washakie Fraud Scheme.

hh)     In or about April 2019, Sezgin Baran Korkmaz made materially false statements in a meeting with special agents from the IRS and the Environmental Protection Agency for the purpose of obstructing the government's investigation of the Washakie Fraud Scheme being conducted in the District of Utah.

All in violation of Title 18, United States Code, Section 371.

**Count 2**
**18 U.S.C. § 1956(h)**
**(Conspiracy to Commit Money Laundering Offenses)**

21.     Paragraphs 1 through 16 of this indictment are re-alleged and incorporated herein by reference.

22.     From in or about September 2013, and continuing at least through in or about March 2020, in the District of Utah and elsewhere, the defendant,

**GRIGOR TERMENDJIAN,**

did knowingly combine, conspire, and agree with other persons known and unknown to the Grand Jury to commit one or more offenses against the United States, to wit: to conduct and attempt to conduct financial transactions affecting interstate commerce, which transactions involved the proceeds of a specified unlawful activity, that is, the proceeds of the Washakie Fraud Scheme, in violation of Title 18, United States Code, Section 1341, and Title 18, United States Code, Section 1343:

a)      knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b)      by knowingly engaging in monetary transactions, by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, in violation of Title 18, United States Code, Section 1957;

and that while conducting or attempting to conduct such transactions knew that the property involved in the transactions represented the proceeds of some form of unlawful activity.

**Manner and Means**

23.     The manner and means by which Defendant TERMENDJIAN and his co-conspirators would and did carry out the objectives of the conspiracy included the following:

a)     Paragraphs 19(a) through 19(p) of this indictment are re-alleged and incorporated herein by reference.

All in violation of Title 18, United States Code, Sections 1956(h).

**Counts 3 thru 6**
**18 U.S.C. § 1957**
**(Expenditure Money Laundering)**

24.     Paragraphs 1 through 16 of this indictment are re-alleged and incorporated herein by reference.

25.     On or about the dates set forth below, in the District of Utah and elsewhere, the defendant,

**GRIGOR TERMENDJIAN,**

did knowingly engage, and did aid, abet, counsel, command, induce, procure, and cause the engaging in the following monetary transactions by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, the wire transfer, withdrawal, and payment of funds and monetary instruments described and in the amounts set forth in the chart below, which were derived from a specified unlawful activity, namely, the proceeds of the Washakie Fraud Scheme, in violation of Title 18, United States Code, Section 1341 and Title 18, United States Code, Section 1343, and that while conducting or attempting to conduct such transactions knew that the property involved in the transactions represented the proceeds of some form of unlawful activity, each such monetary transaction constituting a separate count of this Indictment, and each in violation of Title 18, United States Code, Section 1957:

19

| Count | Defendant | Date | Monetary Transaction |
|-------|-----------|------|----------------------|
| 3 | GRIGOR TERMENDJIAN | 10/01/19 | $3,900,000 wire transfer from Century Energy account #9961 to Hendrix Henergy Global for "Two Solar Turbines" |
| 4 | GRIGOR TERMENDJIAN | 10/04/19 | $200,000 withdrawal from Century Energy account #9961 to purchase a bank check payable to Industrial Energy Solutions, Inc. |
| 5 | GRIGOR TERMENDJIAN | 10/28/19 | $216,000 wire transfer from Century Energy account #9961 to Zhangjiagang Furuicit Co. Ltd. in China for "Storage Tank Deposit" |
| 6 | GRIGOR TERMENDJIAN | 10/30/19 | $2,000,000 wire transfer from Century Energy account #9961 to Mariner's Escrow for "Loan for Escrow #57147-RM" |

All in violation of Title 18, United States Code, Sections 1957 and 2.

## NOTICE OF INTENT TO SEEK FORFEITURE

1.     Pursuant to 18 U.S.C. § 982(a)(1), upon conviction of the offenses charged in Count 2, in violation of 18 U.S.C. § 1956(h), and Counts 3 thru 6, in violation of 18 U.S.C. § 1957, Defendant GRIGOR TERMENDJIAN shall forfeit to the United States of America any property, real or personal, involved in such offenses, and any property traceable to such property.  The property to be forfeited includes, but is not limited to, the following:

a.     Any and all investments made using commingled fraud proceeds by Defendant TERMENDJIAN or Century Energy in the United States;

b.     The gas solar turbines, located at 14675 Hold Street, Mojave, California 95301;

c.     Any and all investments in real property made using proceeds, including the real property at 9153 Stellar Court, Corona, California 92883, and land parcels, APNs 427-111-08, 427-111-10 and 427-111-11, in Mojave, California; and the real property at 5761 S. Anderson St., Vernon, California 90058; and

d.      A MONEY JUDGMENT equal to the value of all property involved in the money laundering and not available for forfeiture for one or more of the reasons listed in 21 U.S.C. § 853(p) as a result of any act or omission of the defendant.

e.      Substitute property as allowed by 21 U.S.C. § 853(p) via 28 U.S.C. § 2461(c).

<u>GRAND JURY'S PROBABLE CAUSE FINDING REGARDING FORFEITURE</u>

The grand jury finds probable cause to believe that Defendant GRIGOR TERMENDJIAN has committed the crimes specified in the above forfeiture notice and that the above properties listed for forfeiture constitute or are derived from proceeds traceable to the Washakie Fraud Scheme described in Paragraphs 10 through 16, and thus are connected to the money laundering conspiracy offense in Count 2, and the money laundering offenses in Counts 3-6, as property involved in the offenses or property traceable to the property involved in the offenses.

A TRUE BILL:

_____
FOREPERSON OF THE GRAND JURY

APPROVED:

TRINA A. HIGGINS
United States Attorney

_____
RICHARD M. ROLWING
Special Assistant United States Attorney