Aaron B. Clark (15404)
Trinity Jordan (15875)
Jacob R. Lee (17531)
**ARMSTRONG TEASDALE LLP**
222 South Main Street, Suite 1830
Salt Lake City, Utah 84101
Telephone: (801) 401-1600
aclark@atllp.com
tjordan@atllp.com
jrlee@atllp.com

Sam Meziani (UT# 9821)
**Goebel Anderson PC**
405 South Main Street, Suite 200
Salt Lake City, Utah 84111
Telephone: (801) 441-9393
smeziani@gapclaw.com

*Attorneys for Grigor Termendjian*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> vs. <br><br> **GRIGOR TERMENDJIAN**, <br><br> Defendant. | **DEFENDANT'S MOTION TO DISMISS COUNTS 3-6 OF INDICTMENT FOR IMPROPER VENUE** <br><br> Case No. 2:23-cr-00119 <br><br> Judge Dale A. Kimball |

Defendant Grigor Termendjian, by and through his counsel, files this Motion to Dismiss Counts 3–6 ("**Motion**") of the Indictment on the basis that proper venue lies outside this District pursuant to Fed. R. Crim. P. Rule 12(b)(3)(A)(i) and DUCrimR 12-1. In support , the Defendant respectfully provides the following Memorandum in Support of the Motion for this Court's

consideration to show defects in institution of the prosecution pursuant to U.S. Const. art. III, sec. 2 and Fed. R. Crim. P. Rule 18.

## INTRODUCTION

The Court should grant Mr. Termendjian's Motion to Dismiss the four substantive money laundering charges filed pursuant to 18 U.S.C § 1957 ("Counts 3–6") because the indictment fails to allege facts that would support a finding that venue is proper in this District. *See United States v. Jordan*, 846 F. Supp. 895, 898 (D. Nev. 1994) (Although "[v]enue over the conspiracy offense will *ipso facto* exist in any district in which a substantive offense in furtherance of the conspiracy was committed …[v]enue over the substantive offense will exist only in those districts in which the substantive offense was "committed" and not in other districts in which venue over the conspiracy exists."). Specifically, the Indictment neither pleads that the purported money laundering activities occurred in the District of Utah nor that Mr. Termendjian participated in the transfer of proceeds generated from the specified unlawful activity in the District of Utah.

## RELEVANT FACTS

1. Mr. Termendjian resides in North Hollywood, California.

2. On March 28, 2023, a grand jury seated in the District of Utah indicted Mr. Termendjian with six counts related to an alleged scheme to defraud the United States of renewable fuel tax credits (the "Washakie Fraud Scheme" or "Specified Unlawful Activity").

3. The indicted counts include:

   i. A Conspiracy to Defraud the United States pursuant to 18 U.S.C. § 371;

   ii. A Conspiracy to Commit Money Laundering Offenses pursuant to 18 U.S.C. § 1956(h); and

   iii. Four substantive Money Laundering charges pursuant to 18 U.S.C. § 1957

    ("Counts 3–6").

    4.  Mr. Termendjian's alleged co-conspirators, Jacob Kingston ("Kingston") and Levon Termendzhyan ("Levon") (collectively, "Co-Conspirators"), pleaded guilty or were convicted of charges, respectively, relating to the underlying Washakie Fraud Scheme in a related case, *United States v. Jacob Ortell Kingston*, *et al.*, Case No. 2:18-cr-00365-JNP (District of Utah). *See* Def.'s Indict. at ¶¶ 1–16.

    5.  The Washakie Fraud Scheme involved an arrangement in which the co-conspirators fraudulently obtained U.S. Treasury checks from the IRS by causing two Utah-based companies, Washakie Renewable Energy, LLC and United Fuel Supply, *id*. at ¶ 3, to file false claims for refundable renewable fuel credits, resulting in fraud on the Government in an approximate amount of $470 million in fraud proceeds. *Id*. at ¶ 10.

    6.  The indictment does not allege Mr. Termendjian committed any acts in furtherance of the filing of false claims in the underlying Washakie Fraud Scheme, nor does it allege any acts by Mr. Termendjian that furthered the generation of fraud proceeds. *See*, *generally*, *id*.

    7.  These fraud proceeds were then transferred to various foreign accounts in Turkey and Luxembourg, purportedly at the direction of Levon, before being transferred back into domestic bank accounts. *Id*. at ¶¶ 11–14.

    8.  As pertaining to Counts 3–6, it is alleged that Levon directed the transfer of approximately $111 million in fraud proceeds from these foreign accounts into numerous domestic bank accounts controlled by both Mr. Termendjian and Levon, wherein the fraud proceeds were commingled with other funds. *Id*. at ¶¶ 13–14.

    9.  The entity relevant to Counts 3–6 and this motion is Century Energy, Inc. ("Century Energy"). *Id*. at ¶¶ 7, 24–25. Century Energy is a California-based corporation that operates within

the Los Angeles area, *id*. at ¶¶ 1–2.

10. Counts 3–6 allege that Mr. Termendjian "did knowingly engage, and did aid, abet, counsel, command, induce, procure, and cause the engaging in [four monetary transactions] by, through, and to a financial institution . . . in criminally derived property of a value greater than $10,000 . . . which were derived from a specified unlawful activity, namely, the proceeds of the Washakie Fraud Scheme." Id. at ¶ 25. The four monetary transactions at issue include:

　　i. An October 1, 2019, wire transfer from Century Energy to Hendrix Henergy Global for "Two Solar Turbines" totaling $3,900,000;

　　ii. An October 4, 2019, withdrawal from Century Energy to purchase a bank check payable to Industrial Energy Solutions, Inc. totaling $200,000;

　　iii. An October 28, 2019, wire transfer from Century Energy to Zhangjiagang Furuicit Co. Ltd. for a "Storage Tank Deposit" totaling $216,000; and

　　iv. An October 30, 2019, wire transfer from Century Energy to Mariner's Escrow for "Loan for Escrow #57147-RM" totaling $2,000,000.

*Id*.

11. In sum, Counts 3–6 allege Mr. Termendjian made four monetary transactions from Century Energy, located in California, to outside entities using funds traceable to Washakie Fraud Scheme proceeds. The Indictment, however, does not allege that Mr. Termendjian was involved in the generation of those proceeds, the transfer of those proceeds from the District of Utah to foreign bank accounts, or the transfer of those proceeds from foreign accounts into domestic accounts he allegedly controlled.

**ARGUMENT**

Mr. Termendjian has the right to be tried in the district where the offense was committed. *See* U.S. Const. art. III, § 2; *see also*, Fed. R. Crim. P. 18 ("Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed"). The Government must prove venue as an element of the Counts and is burdened with alleging and proving that venue lies properly in the District of Utah. *See United States v. Cryar*, 232 F.3d 1318, 1323 (10th Cir. 2000). Venue, or "*locus delicti*, must be determined from the nature of the crime alleged and location of the act or acts constituting it." *United States v. Smith*, 641 F.3d 1200, 1207 (10th Cir. 2011) (internal quotations omitted). In performing this inquiry, "a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279 (1999).

**I.   The Indictment Fails to Show the District of Utah is a Proper Venue for Counts 3–6 Because the Indictment Fails to Allege the Money Laundering Activities Occurred in Utah and that Mr. Termendjian Participated in the Transfer of Proceeds from Utah.**

Section 1957 requires the Government allege and prove that Mr. Termendjian (1) knowingly engaged or attempted to engage in a monetary transaction, (2) knew that the transaction involved criminally derived property, (3) the criminally derived property was of a value greater than $10,000, (4) the criminally derived property was derived from a specified unlawful activity, and (5) the monetary transaction took place in the United States. *See* 18 U.S.C. § 1957(a). Notably, the money laundering charges do not require Mr. Termendjian to have detailed information related to the specified unlawful activity from which the criminally derived property was generated, but only that the property was criminally derived. *See* 18 U.S.C. § 1957(c).

5

Section 1956 proscribes proper venue for Section 1957 offenses. Prosecution for Section 1957 money laundering offenses may be brought in "any district in which the financial or monetary transaction is conducted," or "any district where a prosecution for the underlying specified unlawful activity could be brought, *if the defendant participated in the transfer of the proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted.*" 18 U.S.C. § 1956(i)(1) (emphasis added). A transfer of funds from one place to another constitutes a single transaction, and any person who conducts any portion of the transaction may be charged "in any district in which the transaction takes places." 18 U.S.C. 1956(i)(3).

In this case, the dispositive issue for the *locus delicti* is whether Mr. Termendjian conducted a monetary transfer of the proceeds of the Specified Unlawful Activity within the District of Utah, and if not, whether he participated in the transfer of the proceeds of the Specified Unlawful Activity from the District of Utah to the Central District of California where the alleged monetary transaction offenses took place. The Indictment fails to allege either scenario for two reasons.

First, the Indictment fails to allege that the purported money laundering activities occurred in the District of Utah. Rather, it alleges that a California resident used a California corporation, with California accounts, to transfer money to other companies for property in California or to a company in China. The Indictment lacks a single affirmative allegation connecting the money laundering charges to the District of Utah.

In *United States v. Cabrales*, the Supreme Court examined a similar case wherein a defendant was charged with Section 1957 money laundering and Section 371 conspiracy. *See*, *generally*, *United States v. Cabrales*, 524 U.S. 1 (1998) (construing 18 U.S.C. §§ 1956, 1957

6

(1996)). There, the Government alleged the defendant had conducted several withdrawals from a bank account located in Florida. *Id.* The government further alleged the money in those withdrawals was traceable to drug dealing proceeds generated exclusively in Missouri. *Id*. On defendant's motion, the district court dismissed the two money laundering counts as improperly venued in Missouri. *Id*. at 2. In affirming the ruling, the Supreme Court upheld and quoted the Eighth Circuit's reasoning that the fact the criminally derived proceeds came from Missouri was "of no moment" because the defendant dealt with those proceeds exclusively in Florida. *Id*. at 8 (quoting *United States v. Cabrales*, 109 F.3d 471, 472 (8th Cir.), *amended*, 115 F.3d 621 (8th Cir. 1997)). The Supreme Court reasoned that Sections 1956 and 1957 did not proscribe "the anterior criminal conduct that yielded the funds allegedly laundered" and affirmed the dismissal of the Section 1957 money laundering charges. *Id.* at 7. The Court further concluded that the existence of the criminally generated proceeds was a circumstantial element of the offense, but the proscribed conduct—defendant's money laundering activity—occurred after the fact of an offense begun and completed by others. *See id*. at 2; *see also*, *Rodriguez-Moreno*, 526 U.S. at 280 n.4 (1999) (construing *Cabrales*).

In light of *Cabrales*, Congress amended Section 1956 in 2001 by adding the Subsection (i) venue provision. USA Patriot Act of 2001, PL 107–56, October 26, 2001, 115 Stat. 272 § 1004 (adding the Subsection (i) venue provision). *Cabrales* noted in dicta that the Government was not precluded from linking the defendant's participation in the conspiracy to actions in furtherance of the specified unlawful activity such that venue might be proper in Missouri, however, it declined to rule on the issue outright. *Cabrales*, 524 U.S. at 9 (1998). In apparent response to the Court's reasoning, Congress's 2001 amendment clarifies the difference between proper venue for Section 1957 money laundering and related conspiracies. *See id*. "A prosecution for an attempt or

7

conspiracy offense under [Section 1956 or 1957] may be brought . . . in any district where an act in furtherance of the attempt or conspiracy took place," whereas a prosecution for money laundering offense may only be brought in the district where the financial transaction was conducted or in the district where prosecution for the underlying specified unlawful activity could be brought "if the defendant participated in the transfer of the proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted." *Compare* 18 U.S.C. § 1956(i)(2) *with* 18 U.S.C. § 1956(i)(1). In other words, the amendment specifically created separate venue requirements for money laundering and money laundering conspiracies to address the Court's speculation.

The indictment in the instant case similarly fails to allege that Mr. Termendjian participated in the generation of fraud proceeds from the Specified Unlawful Activity or otherwise participated in the transfer of fraud proceeds from the District of Utah. Rather, it merely alleges that the monetary transfers that occurred in California included commingled fraud proceeds.

Second, the Indictment lacks factual allegations that Mr. Termendjian participated in the transfer of proceeds generated from the Specified Unlawful Activity from Utah such that venue would be proper in the District of Utah under Section 1956(i)(1)(B). Though the Indictment includes two factual allegations related to Mr. Termendjian's participation in transfers between foreign accounts and domestic accounts, *see* ¶¶ 20(e) and (f)[1], these transactions alone do not constitute his participation "in the transfer of the proceeds of the specified unlawful activity from [the District of Utah] . . ." 18 U.S.C. § 1956 (i)(1)(B). Rather, each of Mr. Termendjian's purported

---

[1] These allegations are related to overt acts in furtherance of the Section 357 conspiracy charge, not the Section 1957 money laundering charges. Counts 3–6 fail to incorporate these allegations as acts in furtherance of his Section 1957 money laundering charges. *See Def.'s Indict.* ¶ 24 (incorporating only Paragraphs 1–16 into Counts 3–6).

transfers to and withdrawal from the California accounts of the alleged proceeds constitutes "a single, continuing transaction" pursuant to Section 1956(i)(3). While a prosecution for the Specified Unlawful Activity, though not alleged, could be brought in Utah, proper venue for the money laundering offenses exists in Utah only "if the defendant participated in the transfer of the proceeds of the specified unlawful activity from [Utah] to [California]." 18 U.S.C. § 1956(i)(1)(B).

Congress's intent to place venue of a Section 1957 offense in the district where the transfer occurred, irrespective of where the funds derived absent exceptions inapplicable here, is evident through Section 1957's scienter requirement. The Government is not required to prove that Mr. Termendjian knew details or specifics regarding the specified unlawful activity from which the transferred funds derived. The Government's charge could conceivably be brought irrespective of whether Mr. Termendjian participated in or knew of the Washakie Fraud Scheme, so long as the monetary transfer included proceeds of *some* criminal activity. *See* 18 U.S.C. § 1957(c). The irrelevance of this information in the elements of the offense shows the only proper venue would lie in the district in which the transfer was made because Mr. Termendjian, in this example, would have no connection whatsoever to the District of Utah.

While Congress allowed conspiracy charges to be brought in a district where an act in furtherance of the conspiracy took place, Section 1956(i)(2), it did not extend this provision to Section 1957 monetary transfers where a conspiracy purportedly took place simultaneously. Rather, Congress explicitly proscribed that venue may only lie in Utah if Mr. Termendjian participated in the transfer of the proceeds of the Washakie Fraud Scheme from Utah, which is neither explicitly alleged nor implicit from Mr. Termendjian's purported conduct as co-conspirator in the Indictment.

The Supreme Court has recognized that "questions of venue in criminal cases . . . are not merely matters of formal legal procedure." *United States v. Johnson*, 323 U.S. 273, 276 (1944). "They raise deep issues of public policy" and implicate "the fair administration of criminal justice and the public confidence in it." *Id*. Because the alleged monetary transfers occurred exclusively within the Central District of California, there exists a defect in instituting the prosecution of Counts 3–6 based on improper venue, and those charges must be dismissed to preserve the Mr. Termendjian's Constitutional right to be tried in the district where the offenses purportedly occurred.

## CONCLUSION

For the foregoing reasons, the Defendant respectfully requests that this Court dismiss Counts 3–6 of the Indictment as improperly prosecuted in this venue pursuant to U.S. Const. art. III, sec. 2 and Fed. Crim. P. Rule 18.

DATED this 15th day of June, 2023.

**ARMSTRONG TEASDALE, LLP**

/s/ Aaron B. Clark
Aaron B. Clark
Trinity Jordan
Jacob R. Lee

Sam Meziani
**Goebel Anderson PC**

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 15th, 2023, I caused a true and correct copy of the foregoing **NOTICE OF APPEARANCE** to all counsel of record via the Court's electronic notification system.

                                                    /s/ *Shelby Irvin*