Aaron B. Clark (15404)
Trinity Jordan (15875)
Jacob R. Lee (17531)
**ARMSTRONG TEASDALE LLP**
222 South Main Street, Suite 1830
Salt Lake City, Utah 84101
Telephone: (801) 401-1600
aclark@atllp.com
tjordan@atllp.com
jrlee@atllp.com

Sam Meziani (UT# 9821)
**Goebel Anderson PC**
405 South Main Street, Suite 200
Salt Lake City, Utah 84111
Telephone: (801) 441-9393
smeziani@gapclaw.com

*Attorneys for Grigor Termendjian*

**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> Plaintiff, <br><br> vs. <br><br> **GRIGOR TERMENDJIAN**, <br><br> Defendant. | **DEFENDANT'S MOTION TO TRANSFER VENUE AND MEMORADUM IN SUPPORT OF MOTION** <br><br> Case No. 2:23-cr-00119 <br><br> Judge Dale A. Kimball |

Defendant Grigor Termendjian, by and through counsel, pursuant to Fed. R. Crim. P. 21(b) moves to transfer this case to the Central District of California. All charges remaining after Mr. Termendjian's Motion to Dismiss, filed prior to this Motion, should be transferred to the Central District of California under Federal Rule of Criminal Procedure 21(b) and for the reasons stated herein.

# INTRODUCTION

While the Government has flexibility to select venue when prosecuting a defendant for conspiracy, its venue decision is not final but remains subject to this Court's review based on fairness and judicial economy. *See U.S. v. Johnson*, 65 S. Ct. 249, 250 (1944). While the Government is afforded discretion in selecting the charging venue for criminal offenses with multiple proper venues, the Supreme Court reasoned "such leeway not only opens the door to needless hardship to an accused by prosecution remote from home and from appropriate facilities for defense . . . [and] leads to the appearance of abuses, if not to abuses, in the selection of what may be deemed a tribunal favorable to the prosecution." *Id.* The Supreme Court has provided courts with guidance on the practical matters that it should consider when determining whether venue should be transferred. *See Platt v. Minnesota Mining & Mnfg. Co.*, 376 U.S. 240, 243–44 (1964). Analyzing this case under *Platt*, this case should be transferred to the Central District of California to avoid needless hardship, undue expense, and the appearance of abuse on behalf of the Government to try Mr. Termendjian where it expects to receive a more favorable verdict.

# ARGUMENT

This Court has discretion to grant a motion to transfer a proceeding to another venue "[f]or the convenience of parties and witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b); *see also United States v. Young*, No. 2:12-CR-502, 2012 WL 5397185, at *1 (D. Utah Nov. 5, 2012). When evaluating Mr. Termendjian's motion for change of venue under Rule 21(b), this Court should consider the ten *Platt* factors:

> (1) location of [ ] defendant; (2) location of possible witnesses; (3) location of events likely to be in issue; (4) location of documents and records likely to be involved; (5) disruption of defendant's business unless the case is transferred; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9)

docket condition of each district or division involved; and (10) any other special elements which might affect the transfer.

*Platt*, 376 U.S. at 243–44; *United States v. Young*, No. 2:12-CR-502, 2012 WL 5397185, at *1, n.2 (D. Utah Nov. 5, 2012) (*quoting In re United States,* 273 F.3d 380, 388 (3d Cir. 2001)) ("Although *Platt* involved a corporate defendant, the ten Platt factors are used in cases involving individual defendants as well.").

   1. ***The location of the litigants, their business interests, and counsel favors the Central District of California.***

This Court should conclude that the location of the litigants supports transferring this matter to the Central District of California. In particular, the Court should find that the location of the defendant, the location of Mr. Termendjian's business ventures and personal affairs, as well as the adverse impact that prolonged litigation in a foreign jurisdiction would have on those ventures, and the location of counsel all weigh in favor of venue in the Central District of California. Mr. Termendjian, the sole defendant and only natural party to the suit, has no relationship to this venue, either generally or with specific regard to this matter, but does have a constitutionally recognized interest in obtaining a local trial. The Government's venue selection deprives Mr. Termendjian of a local trial in California and imposes significant hardships through disruption of his personal business that justify a venue transfer. Finally, the location of counsel does not favor the District of Utah.

First, Mr. Termendjian does not reside, and has never resided, in the District of Utah. Mr. Termendjian resides in North Hollywood, California. Mr. Termendjian has lived and worked in the greater Los Angeles area his entire life, and he has no ties to Utah. The general constitutional requirement to try Mr. Termendjian where he lives stems from fundamental protections established by our forefathers to ensure defendants, like Mr. Termendjian, are not dragged to distant places to

stand trial.  U.S. Const. art. III, amend. VI; *see Johnson*, 65 S. Ct. at 250; *see also U.S. v. Ohran*, No. 99 CR, 142 (JSM), 2000 WL 620217, at *1 (S.D.N.Y. May 12, 2000).  Mr. Termendjian's location in this case—the Central District of California—strongly favors transfer.

Second, a trial in this district poses a significant hardship on Mr. Termendjian through the forced and prolonged absence from California which will disrupt important personal obligations and cause severe interruption to his business. At this time, Mr. Termendjian is a fifty-nine-year-old man with substantial business and personal affairs that require his presence in California. Mr. Termendjian has a significant interest in limiting disruption to the businesses he owns and operates. As reflected by the Government's indictment, Mr. Termendjian has interests in many California business entities and their operations.[1]

Mr. Termendjian is also actively involved in the day-to-day care of his seventy-seven-year-old mother who is suffering from a grave cardiovascular condition causing insufficient blood flow to her brain.  Due to this condition, Mr. Termendjian's mother requires increased attention and frequent support with household chores, daily routine activities, and transportation to doctors' appointments.  Mr. Termendjian is his mother's primary caretaker, and there is no one else available to take on these responsibilities.  These responsibilities further favor transfer to the Central District of California.  *See United States v. Fiorentino*, No. 13-CR-338 (SJF), 2014 WL 108415, at *4 (E.D.N.Y. Jan. 6, 2014) ("family concerns" favored transfer where defendant assisted in the care of his infirm mother). The potential disruption to Mr. Termendjian's responsibilities would be significantly reduced if this case were transferred to the Central District

---

[1] Mr. Termendjian is the Chief Executive Officer, Secretary, and Chief Financial Officer of several businesses in California, including Speedy Fuel, Inc., Century Energy, Inc., Vernon Truck Wash, Inc., Petrolion, Inc., and International Pita Bread, Inc.

of California; Mr. Termendjian could still provide critical assistance to his mother and would be available to her in the case of any emergencies.

The interruption of Mr. Termendjian's business and personal affairs by trial of this matter in the District of Utah is exacerbated because of the substantial amount of time that this case will require for trial. The Government has indicated that it has identified several terabytes of related discovery constituting millions of records as discovery in this case. Given the substantial amount of discovery, it is safe to assume this matter will require weeks of Mr. Termendjian's time once a trial begins. When combined with the presentation of Mr. Termendjian's defense, jury deliberations, and the weeks before trial meeting with his counsel in preparation, a trial in this venue would require Mr. Termendjian to be absent from his home for a substantial extended period of time and in a state where he has no connections, family, or residence. This is a significant hardship for Mr. Termendjian during what will be one of the most trying times in his life.

Third, the location of counsel does not favor this district. By virtue of his longtime presence in the greater Los Angeles community, Mr. Termendjian has counsel in the Central District of California who is more knowledgeable and familiar with Mr. Termendjian's business and is therefore more prepared to defend Mr. Termendjian in that venue. Neither does the Government have a particular interest in its counsel litigating this matter in Utah. In this case, the Government's attorneys are all based in Washington D.C. and from outside this District. The only Government representative that may be affected by the change of venue is the case agent who is based in Utah. When considered as a whole, the location of the litigants, their business interests, and counsel heavily favors a transfer to the Central District of California.

## 2. *The location of the evidence in this case favors the Central District of California.*

This Court should also conclude that the location of the evidence necessary for the trial of this matter favors trial in the Central District of California. *Platt* counsels courts to consider the location of potential witnesses, location of documents and records likely to be involved, and the location of events likely to be in issue. 376 U.S. at 243–44. These considerations all support a transfer of venue to the Central District of California.

First, the location of potential witnesses supports transfer. At the time this Motion was filed, the Government has brought six charges against Mr. Termendjian, including two conspiracy charges and four money laundering charges. To date, the Government has not provided a list of its proposed witnesses for any of the charges. The indictment, however, suggests that there are far more Government witnesses in California than anywhere else.

The indictment heavily relies upon the allegation that Mr. Termendjian utilized numerous businesses owned and/or controlled by him to commit each crime—however, all of these businesses are located in California. Specifically, the following entities alleged in the indictment as controlled by Mr. Termendjian are all based in California:

- Speedy Fuel, Inc.;
- Speedy Fuel Distribution, Inc.;
- Speedy Lion Renewable Fuel Investments, LLC;
- Century Energy, Inc.;
- Vernon Truck Wash, Inc.;
- Petrolion, Inc.; and
- International Pita Bread, Inc.

(Dkt. No. 1, ¶ 2).

Levon Termendzhyan was also listed in the indictment, along with a list of associated companies, all which are based in California:

- Noil Energy Group, Inc.;
- Speedy Lion Renewable Fuel Investments, LLC;

- G.T. Energy LLC; and SBK Holdings USA, Inc.

(Dkt. No. 1, ¶ 4).

Of the individuals named in the complaint, Levon Termendzhyan, Jacob Kingston, and Sezgin Baran Korkmaz are all in United States' custody and, if they are intended witnesses for the Government, can be transported to any district for this trial without incurring substantial hardship or expense.

Of other entities or accounts referred to in the indictment, the witnesses that appear relevant to Mr. Termendjian's alleged involvement in this conspiracy include company representatives for the following entities: Komak Isi Yalitim Sistemleri Sanayi ve Tic. L.S. ("Komak"); "Account YY (an account in the name of an associate of Korkmaz)"; Speedy Lion Investments; G.T. Energy; Century Energy; Hendrix Henergy Global; Industrial Energy Solutions, Inc.; Zhangjiagang Furuicit Co.; Mariner's Escrow; Mojave Pipeline Operating Co.; Vernon Truck Wash, LLC; Petrolion Inc.; Speedy Fuel Distribution, Inc.; and International Pita Bread, Inc., a California entity (Table B). Each of these entities are located outside the U.S. altogether or in the Central District of California—and notably, not in Utah. These witnesses are potential witnesses regardless of how the Court rules on the motion to dismiss the money laundering charges for lack of trial venue.

The only Utah based companies named in the indictment - Washakie Renewable Energy, LLC and United Fuel Supply – are no longer in operation. (Dkt. No. 1, ¶¶ 3-8). The only named individual in the indictment who was/is a resident of Utah, Jacob Kingston, is now in Federal custody and can be housed by the Government in California (where there are actual Federal Detention Centers) more easily than here in Utah (where there are not).

Mr. Termendjian's own anticipated witnesses are heavily concentrated in the California-area where Mr. Termendjian runs and operates numerous businesses wrongfully implicated by this

indictment. To defend and rebut the allegations that Mr. Termendjian utilized numerous businesses owned and/or controlled by him to commit each crime, Mr. Termendjian anticipates calling witnesses involved in those businesses. Those witnesses will include members of management, bookkeepers, tax preparers, certified public accountants, and other employees or agents of those entities. Requiring every one of these witnesses to travel to Utah poses, at minimum, a significant delay to this Court, a waste of judicial resources, and an unnecessarily cumbersome hurdle in Mr. Termendjian's ability to present a defense in this case.

Given the location of the known witnesses of the Government, as well as the foreseeable witnesses for the defense, this factor overwhelmingly favors transfer to the Central District of California.

Second, the location of events likely to be in issue strongly favors transfer. California is the "nerve center" of the alleged misconduct, and, therefore, the most significant location with respect to the trial venue. *See U.S. v. Young*, No. 2:12-CR-502, 2012 WL 5397185, at *3 (D. Utah Nov. 5, 2012) ("Some courts have said that the location of key events carries considerable weight … while venue may be appropriate in multiple districts, when the 'nerve center' of the events occurred in one district, transfer to that district has been found to be appropriate.") (internal citations omitted). Unlike *Young* where numerous defendants were seeking transfer, here Mr. Termendjian is set to be tried alone, and the "nerve-center" of his alleged misconduct is centralized in California, as all alleged acts by Mr. Termendjian and all implicated businesses and real estate are situated in California. (Dkt. No. 1, ¶¶ 1, 14). Indeed, as provided in Mr. Termendjian's Motion to Dismiss, all the non-conspiracy counts are alleged to have occurred in the state of California. On the dates reflected in the indictment alleging Mr. Termendjian's overt acts, Mr. Termendjian was allegedly in California, not Utah. (*Id.* ¶ 20).

Thus, the events relevant to the Government's charge have a pronounced connection to California. As described above, all entities identified and implicated by the indictment are located in California; all United States-based bank accounts identified by the indictment were opened in California; all tax preparation was completed in California. (*See* Dkt. No. 1, ¶¶ 19, 20). Further, the indictment implies communications between Mr. Termendjian and Levon Termendzhyan in furtherance of the alleged crimes, most of which purport to have occurred while Mr. Termendjian was in California. (*Id.*).

None of this is to suggest that the alleged offense has *no* connection to this District or that there were no acts allegedly in furtherance of the offense that occurred here. Any significant ties the Government may have had to this District in former, related prosecutions is illusory with respect to Mr. Termendjian. In *Dermen*, a recent, related case tried in Utah, the Government obtained a verdict against Lev Dermen, finding that he conspired to defraud the Government through what it called the "Washakie Fraud Scheme." *United States v. Dermen*, 2:18-cr-365-JNP, Dkt. No. 934. There the Government obtained guilty pleas from Jacob Kingston and Isaiah Kingston on charges of conspiracy to commit mail fraud and conspiracy to commit money laundering in the Washakie Fraud Scheme. *Dermen* involved a number of Utah-based witnesses. Here, however, there are few, if any, potential witnesses based in Utah. And, presumably, the Government's focus will not revolve around how the Kingstons or Mr. Dermen obtained the money at issue; instead, it will look to prove whether Mr. Termendjian knew of a conspiracy to commit criminal acts and joined the conspiracy through the commission of overt acts.

Where, as here, a California-based defendant is charged with (1) Conspiracy to Defraud the United States, (2) Conspiracy to Commit Money Laundering Offenses, and (3) Expenditure Money Laundering, by and through numerous business operations and bank accounts located in

California, it comes as no surprise that California is the "nerve center" of the offense. The surprise is that the Government chose to charge this case in Utah, seemingly because of a favorable result in trying here Mr. Termendjian's alleged co-conspirators.

Finally, a significant number of documents central to this case are in California, not Utah, as each entity owned and operated by Mr. Termendjian implicated by the Government's indictment are located California. Therefore, each of those companies' original books and records are similarly in California and each must be reviewed in this case. Further, to the extent the Government insists that records collected and prepared for the trial of Mr. Termendjian's alleged co-conspirators are located in Utah—those records have surely already been scanned and uploaded to a digital format as they have previously been produced in that trial and therefore could easily be transferred to California. Because most if not all original records and documents concerning Mr. Termendjian in this case must be in California and most documents in the Government's possession have already been produced in a digital format in previous litigation, this factor overwhelmingly favors transfer to the Central District of California.

   3. *The relative expense, accessibility, and docketing conditions favor trial in the Central District of California*

*Platt* instructs the Court to compare and consider the relative expense, accessibility of trial, and docketing conditions associated with each of the proposed forum in determining whether to grant a motion to transfer venue. *See Platt*, 376 U.S. at 243–44. Here, this comparison overwhelmingly weighs in favor of transfer to the Central District of California.

First, a month-long criminal trial in the District of Utah would impose unreasonable and substantial costs on Mr. Termendjian. In addition to the costs he bears in retaining local counsel, he will further bear the costs of traveling to and from this District to prepare for trial, as well as relocation costs for the duration of the trial, not to mention the costs associated with providing

travel for prospective witnesses. These costs will be significantly reduced if the case is transferred to California.

While the Government may incur some costs if the case is transferred, they will be significantly reduced by the availability of office space and support from the U.S. Attorney's Office located in the Central District of California and further offset by the savings from not having to fly the bulk of their fact witnesses to Utah. Moreover, this matter is being handled by the Criminal Tax Division of the Department of Justice located in Washington D.C. In other words, the prosecutors in this matter are all traveling to Utah from D.C. (or other locations outside the district), and a change of venue in California will in no way change the situation for the Government's prosecutors who will be traveling for trial prep, trial, and hearings in front of the court no matter where venue ultimately lands.

Second, the Central District of California is more accessible than this District to all participants in this litigation. As discussed above, Mr. Termendjian, most of the witnesses, and much of the evidence is located within the Central District of California. Trial venue in the Central District of California would allow the trial court significant ease in its interactions with the parties and witnesses because they reside in that district and could appear in court, access evidence, and further investigate this matter through local transportation, rather than interstate ground or air travel.

Third, the docket conditions of the two districts does not support retaining this case in the District of Utah. While the Central District of California serves a significant population, that court has approximately twenty-eight judges managing its case load. While the District of Utah serves a less populated area, it currently has only four of its five judge seats filled. Otherwise, the docket

conditions between the two districts are similar, and Mr. Termendjian does not anticipate any docket issues with a change of venue as the Central District of California.

4. *There are no compelling circumstances or other special considerations that favor trial in the District of Utah.*

Where each of the *Platt* factors plainly weigh in favor of transfer, there are no compelling circumstances or special considerations to this case that warrant allowing venue to lie in Utah. Rather, as described in detail above, Mr. Termendjian is the sole defendant and the only natural party in this case. Mr. Termendjian is located in the Central District of California. No alleged victim could be prejudiced by transfer, as the United States Government[2] can represent its interest in this litigation in California just as easily as it can in Utah.

Additionally, should the Court grant Mr. Termendjian's Motion to Dismiss, transfer of the remaining counts will properly conserve governmental and judicial resources by allowing all pending counts to remain consolidated in one action, upon the Government's refiling in the proper venue for the underlying counts. Transfer further prevents requiring Mr. Termendjian's to defend two nearly identical cases in two jurisdictions. Accordingly, for the convenience of Mr. Termendjian, to prevent greater hardship, and to conserve judicial resources this case belongs in California, not Utah.

5. *Mr. Termendjian's Motion is timely made and weighs in favor of transfer*

The timeliness of Mr. Termendjian's request also carries "particular weight" when analyzing a Rule 21(b) motion to transfer. *See Platt*, 376 U.S. at 243–44. Here, there has been no delay in moving to transfer. By motion, Mr. Termendjian sought leave to file this motion at the earliest stage possible in advance of the scheduling conference and prior to discovery and any

---

[2] Expansively, the Government may suggest the alleged victims are also U.S. Citizens but that must include those in U.S. Citizens in California no less than those in Utah.

substantive motion practice. In fact, counsel for Mr. Termendjian alerted the magistrate of the Rule 21(b) motion at the initial appearance and followed the Court's order on when the motion would be due. As a result, there is no risk that a new judge will be required to duplicate the efforts made by this Court to become familiar with the case, nor be bound by substantive decisions already made by this Court. As such, this factor, too, favors transfer to the Central District of California.

## CONCLUSION

The standard for a Rule 21(b) motion looks to balance the convenience of the parties (especially the defendant), the victim, and the witnesses between two venues that may both be proper. Trying the case in this district would primarily benefit the Washington DC-based prosecutors, who would apparently prefer to essentially retry in this district their case involving Mr. Termendjian's alleged co-conspirators — to the detriment of virtually every other interest enumerated in Rule 21(b). *All* of the pertinent *Platt* factors counsel in favor of transfer to the Central District of California, and under these circumstances, transfer is clearly warranted.

DATED this 15th day of June, 2023.

**ARMSTRONG TEASDALE, LLP**

/s/ Aaron B. Clark
Aaron B. Clark
Trinity Jordan
Jacob R. Lee

Sam Meziani
**Goebel Anderson PC**

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 15th, 2023, I caused a true and correct copy of the foregoing **NOTICE OF APPEARANCE** to all counsel of record via the Court's electronic notification system.

                                                   /s/ *Shelby Irvin*